**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | **CASE NO. 19-33900** |
| **VIRTUOLOTRY, LLC** | § | |
| | § | **CHAPTER 11** |
| Debtor. | § | |

---

### DEBTOR'S DISCLOSURE STATEMENT IN SUPPORT OF DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION

---

Jason P. Kathman
State Bar No. 24070036
Megan F. Clontz
State Bar No. 24069703
PRONSKE & KATHMAN, P.C.
2701 Dallas Parkway, Suite 590
Plano, Texas 75093
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com
Email: mclontz@pronskepc.com

**COUNSEL FOR DEBTOR**
**AND DEBTOR IN POSSESSION**

**DATED: July 31, 2020**

## TABLE OF CONTENTS

| | | | |
|---|---|---|---|
| I. | | INTRODUCTORY STATEMENT AND DISCLOSURES | 4 |
| | 1.1 | Introduction | 4 |
| | 1.2 | Considerations in Preparation of the Disclosure Statement and Plan; Disclaimers | 4 |
| | 1.3 | Disclosure Statement; Construction | 6 |
| | 1.4 | The Confirmation Hearing and Objection Deadline | 7 |
| | 1.5 | Recommendation of the Debtor to Approve the Plan | 7 |
| II. | | DEBTOR'S BACKGROUND INFORMATION | 7 |
| | 2.1 | History of the Debtor | 7 |
| | 2.2 | Events Leadings to Chapter 11 | 8 |
| III. | | EVENTS DURING THE CHAPTER 11 CASES | 8 |
| | 3.1 | Commencement of the Chapter 11 Case | 8 |
| | 3.2 | The 9019 Motion and Adversary Proceeding | 9 |
| | 3.3 | Retention of Professionals by the Debtor | 9 |
| | 3.4 | Bankruptcy Schedules and Statement of Financial Affairs | 10 |
| | 3.5 | Meeting of Creditors | 10 |
| | 3.6 | Operating Reports | 10 |
| | 3.7 | Litigation | 10 |
| IV. | | FINANCIAL INFORMATION | 13 |
| | 4.1 | Assets | 13 |
| | 4.2 | Other | 13 |
| V. | | PLAN OVERVIEW | 14 |
| | 5.1 | Introduction | 14 |
| | 5.2 | Summary of the Plan and Proposed Distributions Under the Plan | 14 |
| VI. | | SUMMARY OF CERTAIN PLAN PROVISIONS | 17 |
| | 6.1 | Means for Implementation of the Plan | 17 |
| | 6.2 | Conditions to Effective Date | 20 |
| | 6.3 | Treatment of Executory Contracts and Unexpired Leases | 20 |
| | 6.4 | Procedures for Resolving Disputed, Contingent and Unliquidated Claims | 21 |
| | 6.5 | Provisions Governing Distributions Generally | 22 |
| | 6.6 | Effects of Confirmation | 25 |
| | 6.7 | Retention of Jurisdiction | 26 |
| VII. | | CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN | 27 |

7.1     Tax ......................................................................................................... 27

IX.     **RESERVED** ...................................................................................... 27

IX.     **THE BEST INTERESTS OF CREDITORS TEST** ................................. 27

9.1     Best Interests of Creditors Test .............................................................. 27

9.2     Liquidation Analysis ............................................................................. 28

X.     **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN** ....... 29

10.1     Alternative Plan(s) ................................................................................ 29

10.2     Liquidation Under Chapter 7 ................................................................ 29

10.3     Dismissal ................................................................................................ 30

10.4     Other Alternatives ................................................................................. 30

XI.     **CERTAIN RISK FACTORS TO BE CONSIDERED** ............................ 30

11.1     Certain Bankruptcy Law Considerations ............................................ 30

11.2     Estimated Recovery Risks ..................................................................... 31

XII.     **VOTING PROCEDURES AND REQUIREMENTS** .............................. 31

12.1     Voting Deadline .................................................................................... 31

12.2     Creditors Solicited to Vote ................................................................... 32

12.3     Definition of Impairment ..................................................................... 32

12.4     Classes Impaired Under the Plan ......................................................... 33

12.5     Votes Required for Class Acceptance ................................................... 33

12.6     Specific Considerations in Voting ........................................................ 34

XIII.     **MISCELLANEOUS PROVISIONS** ..................................................... 34

13.1     Disclosures Required by the Bankruptcy Code ................................... 34

13.2     Certain Rights Unaffected .................................................................... 34

13.3     Binding Effect ....................................................................................... 34

13.4     Notices ................................................................................................... 34

13.5     Injunctive Relief .................................................................................... 35

XIV.     **RECOMMENDATION AND CONCLUSION** ..................................... 35

## DISCLAIMER

ALL HOLDERS OF CLAIMS ARE ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE DEBTOR'S PLAN OF REORGANIZATION DATED JULY 31, 2020 (AS AMENDED, MODIFIED AND SUPPLEMENTED FROM TIME TO TIME, THE "PLAN"), IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. ALL SUMMARIES OF THE PLAN AND OTHER STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS ANNEXED TO THE PLAN, ANY SUPPLEMENTS TO THE PLAN, AND THE EXHIBITS ANNEXED TO THIS DISCLOSURE STATEMENT. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS AS OF THE DATE HEREOF, UNLESS OTHERWISE STATED HEREIN, AND THERE CAN BE NO ASSURANCE THAT THE STATEMENTS CONTAINED HEREIN WILL BE CORRECT AT ANY TIME AFTER THE DATE HEREOF. MOREOVER, THERE MAY BE ERRORS IN THE STATEMENTS AND/OR FINANCIAL INFORMATION CONTAINED HEREIN AND/OR ASSUMPTIONS UNDERLYING SUCH STATEMENTS AND/OR FINANCIAL INFORMATION. THE DEBTOR EXPRESSLY DISCLAIMS ANY OBLIGATION TO UPDATE OR CORRECT ANY SUCH FINANCIAL INFORMATION OR ASSUMPTIONS.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE LAW. THIS DISCLOSURE STATEMENT AND THE PLAN FOR THE DEBTOR DESCRIBED HEREIN HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, ANY STATE SECURITIES COMMISSIONS, ANY OTHER NATIONAL SECURITIES COMMISSION OR REGULATORY BODY, AND NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY STATE SECURITIES COMMISSION NOR ANY NATIONAL SECURITIES COMMISSION OR REGULATORY BODY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. TO THE EXTENT ANY RIGHTS OR INTERESTS ISSUED PURSUANT TO THE PLAN ARE DEEMED SECURITIES, NEITHER THE OFFER NOR THE ISSUANCE OF ANY SUCH SECURITIES PURSUANT TO THE PLAN HAS BEEN REGISTERED UNDER THE 1933 ACT OR ANY SIMILAR STATE SECURITIES LAWS. ANY SUCH OFFER OR ISSUANCE IS BEING MADE IN RELIANCE ON THE EXEMPTIONS FROM REGISTRATION THEREUNDER SPECIFIED IN SECTION 1145 OF THE BANKRUPTCY CODE. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE. PERSONS OR ENTITIES TRADING IN OR OTHERWISE PURCHASING, SELLING OR TRANSFERRING SECURITIES OR CLAIMS OF THE DEBTOR IN THIS CASE SHOULD EVALUATE THIS DISCLOSURE STATEMENT AND THE PLAN IN LIGHT OF THE PURPOSE FOR WHICH THEY WERE PREPARED.

AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS, AND OTHER PENDING OR THREATENED LITIGATION OR ACTIONS, THIS DISCLOSURE STATEMENT AND

THE EXHIBITS HERETO DO NOT CONSTITUTE AND MAY NOT BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, STIPULATION, OR WAIVER, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS AND SHALL BE INADMISSIBLE FOR ANY PURPOSE ABSENT THE EXPRESS WRITTEN CONSENT OF THE DEBTOR AND THE PARTY AGAINST WHOM SUCH INFORMATION IS SOUGHT TO BE ADMITTED.

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR THE PURPOSE OF SOLICITING ACCEPTANCE OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.

THIS DISCLOSURE STATEMENT WILL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR WILL IT BE CONSTRUED TO CONSTITUTE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE PLAN AS TO HOLDERS OF CLAIMS AGAINST, OR INTERESTS IN, THE DEBTOR.

### <u>DISCLOSURE REGARDING FORWARD-LOOKING STATEMENTS</u>

This Disclosure Statement includes information regarding certain "forward-looking statements" within the meaning of section 27A of the 1933 Act and section 21E of the Securities Exchange Act of 1934, as amended, all of which are based upon various estimates and assumptions that the Debtor believes to be reasonable as of the date hereof. These statements involve risks and uncertainties that could cause actual future outcomes to differ materially from those set forth in this Disclosure Statement. Such risks and uncertainties include, but are not limited to:

- litigation risks and uncertainties;
- costs associated with the Debtor's restructuring efforts, including its chapter 11 filing; and
- claims and liability estimates.

You should understand that the foregoing as well as other risk factors discussed in this Disclosure Statement, including those listed in Article XI of this Disclosure Statement under the heading "Certain Factors to be Considered," could cause future outcomes to differ materially from those expressed in such forward-looking statements. Given the uncertainties, you are cautioned not to place undue reliance on any forward-looking statements in determining whether to vote in favor of the Plan or to take any other action. The Debtor undertakes no obligation to publicly update or revise information concerning the Debtor's restructuring efforts or their cash position or any forward-looking statements to reflect events or circumstances that may arise after the date of this Disclosure Statement, except as required by law.

# ARTICLE I
# INTRODUCTORY STATEMENT AND DISCLOSURES

## 1.1    Introduction

On November 22, 2019, Virtuolotry, LLC (the "Debtor") filed its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et. seq.* (the "Bankruptcy Code"), in Case No. 19-33900 ("the "Bankruptcy Case") pending in the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court"), thereby initiating this bankruptcy case.

Pursuant to the terms of the Bankruptcy Code, this Disclosure Statement has been approved by the Bankruptcy Court.  Such approval is required by statute and will not constitute a judgment by the Bankruptcy Court as to the desirability of the Plan or as to the value or suitability of any consideration offered thereby.

Contained in the packet of documents which has been sent to you by the Debtor is the Disclosure Statement, the Plan, the Ballot for Voting on the Plan (the "Ballot") and the Order Approving Disclosure Statement and Fixing Time for Filing Acceptance or Rejection of Plan, Combined with Notice Thereof.  Please read all of these materials carefully.  Please note that in order for your vote to be counted, you must: 1) include your name and address, 2) fill in, date, and sign the enclosed Ballot and 3) return it to the attorney for the Debtor by the date and time specified on the Ballot. If you did not receive a Ballot and believe that you should have, please contact counsel for the Debtor via either facsimile at (214) 658-6509 or via email to lvargas@pronskepc.com.

## 1.2    Considerations in Preparation of the Disclosure Statement and Plan; Disclaimers

BECAUSE ACCEPTANCE OF THE PLAN WILL CONSTITUTE ACCEPTANCE OF ALL THE PROVISIONS THEREOF, HOLDERS OF CLAIMS ARE URGED TO CAREFULLY CONSIDER THE INFORMATION REGARDING TREATMENT OF THEIR CLAIMS CONTAINED IN THIS DISCLOSURE STATEMENT.

THE CONFIRMATION AND EFFECTIVENESS OF THE PLAN ARE SUBJECT TO MATERIAL CONDITIONS PRECEDENT. THERE CAN BE NO ASSURANCE THAT THOSE CONDITIONS WILL BE SATISFIED.

THE DEBTOR PRESENTLY INTENDS TO SEEK TO CONSUMATE THE PLAN AND TO CAUSE THE EFFECTIVE DATE TO OCCUR AFTER CONFIRMATION OF THE PLAN. THERE CAN BE NO ASSURANCE, HOWEVER, AS TO WHEN AND WHETHER CONFIRMATION OF THE PLAN AND THE EFFECTIVE DATE ACTUALLY WILL OCCUR.

TO BE COUNTED, YOUR BALLOT MUST BE DULY COMPLETED, EXECUTED, AND ACTUALLY RECEIVED BY THE VOTING DEADLINE.  HOLDERS OF CLAIMS AND

EQUITY INTERST ARE ENCOURAGED TO READ AND CAREFULLY CONSIDER THIS ENTIRE DISCLOSURE STATEMENT, INCLUDING THE PLAN.

*****

**THIS DISCLOSURE STATEMENT CONTAINS SUMMARIES OR CERTAIN PROVISIONS OF THE PLAN, STATUTORY PROVISIONS, DOCUMENTS RELATED TO THE PLAN, ANTICIPATED EVENTS IN THE CASE, AND FINANCIAL INFORMATION. ALTHOUGH THE DEBTOR BELIEVES THAT THE SUMMARIES ARE FAIR AND ACCURATE, SUCH SUMMARIES ARE QUALIFIED TO THE EXTENT THAT THEY DO NOT SET FORTH THE ENTIRE TEXT OF THE PLAN OR CERTAIN DOCUMENTS (AND HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD REFER TO THE PLAN AND SPECIFIED DOCUMENTS IN THEIR ENTIRETY AS ATTACHED HERETO); STATUTORY PROVISIONS, EVENTS, OR INFORMATION. EXCEPT WHERE OTHERWISE SPECIFICALLY NOTED, FACTUAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PROVIDED BY THE DEBTOR. HOLDERS OF CLAIMS AND EQUITY INTERESTS ARE URGED TO REVIEW THE ENTIRE PLAN, A COPY OF WHICH IS ATTACHED HERETO AS EXHIBIT A. IN THE EVENT ANY PROVISION OF THIS DISCLOSURE STATEMENT IS FOUND TO BE INCONSISTENT WITH A PROVISION OF THE PLAN, THE PROVISION OF THE PLAN SHALL CONTROL**

IN DETERMINING WHETHER TO VOTE TO ACCEPT THE PLAN, HOLDERS OF CLAIMS MUST RELY UPON THEIR OWN EXAMINATION OF THE DEBTOR AND THE TERMS OF THE PLAN, INCLUDING THE MERITS AND RISKS INVOLVED. THE CONTENTS OF THIS DISCLOSURE STATEMENT SHOULD NOT BE CONSTRUED AS PROVIDING ANY LEGAL, BUSINESS, FINANCIAL, OR TAX ADVICE. EACH SUCH HOLDER SHOULD CONSULT WITH ITS OWN LEGAL, BUSINESS, FINANCIAL, AND TAX ADVISORS WITH RESPECT TO ANY SUCH MATTERS CONCERNING THIS DISCLOSURE STATEMENT, THE SOLICITATION, THE PLAN AND THE TRANSACTIONS CONTEMPLATED THEREBY.

*****

THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE AS OF THE DATE HEREOF, AND THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS AS OF THE DATE HEREOF, UNLESS OTHERWISE STATED HEREIN, AND NEITHER THE DELIVERY OF THIS DISCLOSURE STATEMENT NOR, IN THE EVENT ANY RIGHTS OR INTERESTS ISSUED PURSUANT TO THE PLAN ARE DEEMED SECURITIES, THE DISTRIBUTION OF ANY SECURITIES PURSUANT TO THE PLAN WILL, UNDER ANY CIRCUMSTANCE, CREATE ANY IMPLICATION THAT THE INFORMATION CONTAINED HEREIN IS CORRECT AT ANY TIME SUBSEQUENT TO THE DATE HEREOF, OR SUCH OTHER DATE AS DESCRIBED HEREIN. ANY ESTIMATES OF CLAIMS OR EQUITY INTERESTS SET FORTH IN THIS DISCLOSURE STATEMENT MAY VARY FROM THE AMOUNTS OF CLAIMS OR EQUITY INTERESTS DETERMINED BY THE DEBTOR OR ULTIMATELY ALLOWED BY THE BANKRUPTCY

COURT, AND AN ESTIMATE SHALL NOT BE CONSTRUED AS AN ADMISSION OF THE AMOUNT OF SUCH CLAIM.

INFORMATION INCORPORATED BY REFERENCE INTO THIS DISCLOSURE STATEMENT SPEAKS AS OF THE DATE OF SUCH INFORMATION OR THE DATE OF THE REPORT OR DOCUMENT IN WHICH SUCH INFORMATION IS CONTAINED OR AS OF A PRIOR DATE AS MAY BE SPECIFIED IN SUCH REPORT OR DOCUMENT. ANY STATEMENT CONTAINED IN A DOCUMENT INCORPORATED BY REFERENCE HEREIN SHALL BE DEEMED TO BE MODIFIED OR SUPERSEDED FOR ALL PURPOSES TO THE EXTENT THAT A STATEMENT CONTAINED IN THIS DISCLOSURE STATEMENT OR IN ANY OTHER SUBSEQUENTLY FILED DOCUMENT WHICH IS ALSO INCORPORATED OR DEEMED TO BE INCORPORATED BY REFERENCE, MODIFIES OR SUPERSEDES SUCH STATEMENT. ANY STATEMENT SO MODIFIED OR SUPERSEDED SHALL NOT BE DEEMED, EXCEPT AS SO MODIFIED OR SUPERSEDED, TO CONSTITUTE A PART OF THIS DISCLOSURE STATEMENT.

### 1.3 Disclosure Statement; Construction

This Disclosure Statement has been prepared to comply with section 1125 of the Bankruptcy Code and is hereby transmitted by the Debtor to Holders of Claims and Equity Interests for use in this solicitation or acceptances from the holders of Claims (the "Solicitation") of the Plan, a copy of which is attached hereto as **Exhibit A. Unless otherwise defined in this Disclosure Statement, capitalized terms used herein have the meanings ascribed to them in the Plan.**

For purposes of this Disclosure Statement, the following rules of interpretation shall apply: (i) whenever the words "include," "includes" or "including" are used, they shall be deemed to be followed by the words "without limitation," (ii) the words "hereof," "herein," "hereby" and "hereunder" and words of similar import shall refer to this Disclosure Statement as a whole and not to any particular provision, (iii) article, section and exhibit references are to this Disclosure Statement unless otherwise specified, and (iv) with respect to any Distribution or Payment under the Plan, "on" a date means on or as soon as reasonably practicable thereafter.

The purpose of this Disclosure Statement is to provide "adequate information" to Persons who hold Claims to enable them to make an informed decision before exercising their right to vote to accept or reject the Plan. By order of the Bankruptcy Court, this Disclosure Statement was approved and held to contain adequate information.

**THE APPROVAL BY THE BANKRUPTCY COURT OF THIS DISCLOSURE STATEMENT DOES NOT CONSTITUTE AN ENDORSEMENT BY THE BANKRUPTCY COURT OF THE PLAN OR A GUARANTEE OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN. THE MATERIAL CONTAINED HEREIN IS INTENDED SOLELY FOR THE USE BY HOLDERS OF CLAIMS AND EQUITY INTERESTS IN EVALUATING THE PLAN AND BY HOLDERS OF CLAIMS IN VOTING TO ACCEPT OR REJECT THE PLAN AND, ACCORDINGLY, MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN THE**

DETERMINATION OF HOW TO VOTE ON THE PLAN. THE PLAN IS SUBJECT TO NUMEROUS CONDITIONS AND VARIABLES AND THERE CAN BE NO ASSURANCE THAT THE PLAN, IF CONFIRMED, WILL BE EFFECTUATED.

### 1.4    The Confirmation Hearing and Objection Deadline

THE BANKRUPTCY COURT HAS SET _____, 2020, AT ____ __.M., CENTRAL TIME, AS THE DATE AND TIME FOR THE COMMENCMENT OF THE HEARING ON CONFIRMATION OF THE PLAN AND TO CONSIDER ANY OBJECTIONS TO THE PLAN. THE CONFIRMATION HEARING WILL BE HELD AT THE UNITED STATES BANKRUPTCY COURT, JUDGE HALE'S COURTROOM, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242. THE DEBTOR WILL REQUEST CONFIRMATION OF THE PLAN AT THE CONFIRMATION HEARING.

THE BANKRUPTCY COURT HAS FURTHER FIXED _____, 2020, AT 4:00 P.M., CENTRAL TIME, AS THE DEADLINE (THE "OBJECTION DEADLINE") FOR FILING OBJECTIONS TO CONFIRMATION OF THE PLAN WITH THE BANKRUPTCY COURT. OBJECTIONS TO CONFIRMATION OF THE PLAN MUST BE SERVED SO AS TO BE RECEIVED BY THE COUNSEL TO THE DEBTOR ON OR BEFORE THE OBJECTION DEADLINE.

ANY OBJECTION TO CONFIRMATION OF THE PLAN MUST BE IN WRITING AND (A) MUST STATE THE NAME AND ADDRESS OF THE OBJECTING PARTY AND THE AMOUNT OF ITS CLAIM OR THE NATURE OF ITS EQUITY INTEREST AND (B) MUST STATE WITH PARTICULARITY THE NATURE OF ITS OBJECTION. ANY CONFIRMATION OBJECTION NOT TIMELY FILED AND SERVED AS SET FORTH HEREIN SHALL BE DEEMED WAIVED AND MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.

### 1.5    Recommendation of the Debtor to Approve the Plan

The Debtor approved the solicitation of the acceptance of the Plan and of the transactions contemplated thereunder. In light of the benefits to be attained by the holders of Claims under the Plan, the Debtor recommends that such Holders of Claims vote to accept the Plan. The Debtor has reached this decision after considering the alternatives to the Plan that are available to the Debtor. These alternatives include liquidation under chapter 7 of the Bankruptcy Code or dismissal of the Debtor's bankruptcy case. The Debtor determined, after consulting with legal advisors, the Plan likely results in a distribution of greater value than would a liquidation under chapter 7.

## ARTICLE II
## DEBTOR'S BACKGROUND INFORMATION

### 2.1    History and Corporate Structure of the Debtor

Debtor is a Delaware limited liability company that is registered to conduct business within the State of Texas. Debtor is managed by its sole member and manager, Richard Boyd. The Debtor

formerly owned and operated a group of commercial buildings located at 6124 Denton Dr., Dallas, Texas 75235 (collectively, the "Denton Property"). The Denton Property is more specifically comprised of three buildings: (a) two buildings ("Buildings 2 and 3") collectively containing approximately 33,750 square feet of warehouse space, which have had significant vacancies since it was constructed in 2007, and (b) an approximate 18,500 square feet building ("Building 1") which was previously used as a showroom for vehicles.

## 2.2    Events Leading to Chapter 11

At the time the Debtor purchased the Denton Property, Building 1 was subject to a lease in favor of Westwood Motorcars, LLC ("Westwood"). The Debtor evicted Westwood, which eviction lead to a wrongful eviction lawsuit filed in the 134th District Court for Dallas County (the "State Court Lawsuit"). The State Court Lawsuit ultimately lead to a judgment against the Debtor in an amount in excess of $1.2 Million (the "Westwood Judgment"). The Westwood Judgment is currently pending appeal before the Court of Appeals for the 5th District of Texas in Appellate Case No. 05-19-0155-CV.

Virtuolotry borrowed money in June 2015 from MDJ Denton, LLC ("MDJ") to purchase the Denton Property, pursuant to a Promissory Note (the "Original Note") and executed a Deed of Trust (the "Deed of Trust"). The MDJ Note had a one-year maturity and was intended to be a short-term bridge note to allow Virtuolotry to find more traditional long-term financing. On or about April 11, 2016, Dreki Capital, LLC ("Dreki"), an entity with common ownership as the Debtor, purchased the Original Note. In conjunction with that transaction, the Original Note was endorsed to Dreki, and the Deed of Trust was assigned to Dreki.

The Debtor defaulted under the Original Note when it did not pay the full amount owed on June 8, 2016, the maturity date in the Original Note. On July 16, 2019, Dreki sent a letter to the Debtor declaring a Notice of Default, Notice of Acceleration and Demand for Payment (the "Default Notice"). Additionally, on July 16, 2019, Dreki served the Debtor with its Notice of Foreclosure Sale (the "Foreclosure Notice"), giving notice of Dreki's intent to foreclose on the Property on August 6, 2019. On August 6, 2019, Dreki appeared at the Dallas County Courthouse and credit bid $5.4 Million for the Property, and the Property was thereby sold to Dreki via foreclosure sale (the "Foreclosure"). Thereafter, Dreki filed its Foreclosure-Sale Deed on August 28, 2019 in the real property records of Dallas County, Texas as Instrument No. 201900228744.

The Debtor filed the Bankruptcy Case to resolve issues related to the Foreclosure and to preserve the Debtor's assets for all creditors.

## ARTICLE III
## EVENTS DURING THE CHAPTER 11 CASE

## 3.1    Commencement of the Chapter 11 Case

On the Petition Date, the Debtor filed its voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since the Petition Date, the Debtor has operated its business as a debtor in possession.

### 3.2     The 9019 Motion and Adversary Proceeding

On December 21, 2019, the Debtor filed its first Motion to Approve Settlement and Compromise of Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Original 9019 Motion") with Dreki, which proposed to return the Denton Property to the Debtor in exchange for a secured claim to Dreki in the amount of $7,128,523.09. [Docket No. 14] On January 13, 2020, Westwood objected to the Original 9019 Motion, and after several hearings and subsequent settlement discussions, the Original 9019 Motion was amended and supplemented. [Docket Nos. 14, 21, 22, 35, 51, and 58]

On February 17, 2020, Westwood commenced Adversary Proceeding No. 20-03019 (the "Westwood Adversary Proceeding") in which it (i) objects to Dreki's claim, (ii) seeks equitable subordination of Dreki's claim, and (iii) seeks a declaratory judgment that its judgment lien is superior to Dreki's lien. The Westwood Adversary Proceeding is currently pending. However, on July 16, the Bankruptcy Court entered an Order on the Debtor's Motion to Dismiss, dismissing the Debtor from the Westwood Adversary Proceeding, subject to Westwood's ability to replead.

The Debtor, Dreki, and Westwood have agreed to settlement terms regarding claims and causes of action that may have arisen as a result of the Foreclosure, pursuant to the terms of the Court's Order Approving Settlement and Compromise of Fraudulent Transfer and Wrongful Foreclosure Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019, entered on July 24, 2020 as Docket No. 183 (the "9019 Order"). Pursuant to the 9019 Order, the prior foreclosure sale of the Denton Property by Dreki was rescinded, vacated, and deemed null and void as of August 6, 2019, the Foreclosure-Sale Deed was voided and held to be without effect, and Dreki was ordered to reconvey and re-transfer the Denton Property to the Debtor within ten (10) days of the Order becoming a Final Order. The parties are to be restored to their status with respect to the Denton Property as of August 6, 2019, with claim allowance and lien positions to be determined through the pending Adversary Proceeding.

Following return of the Denton Property to the Debtor, the Denton Property is the Debtor's primary asset. The Debtor intends to satisfy its obligations under the Plan through the sale of the Denton Property.

### 3.3     Retention of Professionals by the Debtor

On December 21, 2019, the Debtor sought to employ the law firm of Pronske & Kathman, P.C. as counsel for the Debtor (Docket No. 15). On March 4, 2020, the Bankruptcy Court entered an order approving the employment of Pronske & Kathman, P.C. as counsel for the Debtor (Docket No. 85).

On March 30, 2020, the Debtor sought to employ C. D. Shamburger, Jr. as accountant for the Debtor (Docket No. 110). On June 26, 2020, the Bankruptcy Court entered an order approving the employment of Pronske & Kathman, P.C. as counsel for the Debtor (Docket No. 163).

### 3.4  Bankruptcy Schedules and Statement of Financial Affairs

On December 27, 2019, the Debtor filed its Bankruptcy Schedules and Statement of Financial Affairs [Docket Nos. 16 and 17]. The Bankruptcy Schedules set forth the detailed list of the Debtor's assets and liabilities as of the commencement of this case. The Debtor has subsequently filed amendments to its schedules [Docket Nos. 91 and 92] and intends to amend its scheduled following transfer of the Denton Property from Dreki to the Debtor, pursuant to the 9019 Order.

### 3.5  Meeting of Creditors

On December 30, 2019, the United States Trustee conducted the meeting of creditors pursuant to section 341 of the Bankruptcy Code for the Bankruptcy Case.

### 3.6  Operating Reports

As required by the United States Trustee, Monthly Operating Reports during the pendency of this case have been filed with the Clerk of the Bankruptcy Court. The Monthly Operating Reports are incorporated herein by reference. A copy of the Debtor's most recent monthly operating report is attached hereto as **Exhibit B.**

### 3.7  Litigation

(a)  Potential Litigation

The Plan preserves all Causes of Action. The Causes of Action include certain Avoidance Actions and other claims and potential claims that the Debtor holds against third parties.  In accordance with section 1123(b)(3) of the Bankruptcy Code, the Plan further provides that the Reorganized Debtor will have standing, on and after the Effective Date of the Plan, to pursue Causes of Action retained under the Plan. The Estate may hold the following Causes of Action, among others, all of which shall be preserved (unless expressly otherwise released by the Plan):

(i)  Malpractice and Negligence Against Former Law Firm.

The Debtor asserts that it has claims against its former law firm, Cherry Peterson Landry Albert LLP ("Cherry Peterson") related to its representation of the Debtor in the litigation against Westwood. More specifically, the Debtor believes it has claims against Cherry Peterson related to *inter alia* malpractice and/or negligence in representation of the Debtor.

(ii)  Fraudulent Transfers and Other Avoidance Actions.

Under section 548 of the Bankruptcy Code and various state laws, a debtor may recover certain prepetition transfers of property, including the grant of a security interest in property, made while insolvent to the extent the debtor receives

less than fair value for such property. In addition, avoidance actions exist under section 544, 545, 549 and 553(b) of the Bankruptcy Code that allow a debtor to avoid and/or recover certain property. The Plan proposes to pay General Unsecured Creditors in full. As such, the Debtor may choose to forego pursuing fraudulent transfer and preference causes of action.

(iii)     Other Causes of Action

The Reorganized Debtor will continue the investigation and analysis of Causes of Action. There may be numerous Causes of Action which currently exist or may subsequently arise that are not set forth in the Plan or Disclosure Statement, because the facts upon which such Causes of Action are based are not fully or currently known by the Debtor and as a result, cannot be raised during the pendency of the Bankruptcy Case (collectively the "Unknown Causes of Action"). The failure to list any such Unknown Cause of Action in the Plan or the Disclosure Statement is not intended to limit the rights of the Reorganized Debtor to pursue any Unknown Cause of Action to the extent that facts underlying such Unknown Cause of Action become fully known to the Debtor or Reorganized Debtor.

The Debtor has attempted to disclose herein certain material Causes of Action including Avoidance Actions and other actions that it may hold against third parties. However, the Debtor has not performed an exhaustive investigation or analysis of all potential claims and Causes of Action against third parties. It is the contemplation of the Plan, that such investigation and analysis will continue post-confirmation by the Reorganized Debtor. You should not rely on the omission of the disclosure of a claim or Cause of Action to assume that the Debtor holds no claim or Cause of Action against any third-party, including any Creditor that may be reading this Disclosure Statement and/or casting a Ballot.

**Unless expressly released by the Plan or by an order of the Bankruptcy Court, any and all such claims and Causes of Action against third parties are specifically reserved, including but not limited to any such claims or Causes of Action relating to any counterclaims, demands, controversies, costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, legal proceedings, equitable proceedings, and executions of any nature, type, or description, avoidance actions, fraudulent transfer actions, strong-arm power actions, state law fraudulent transfer actions, improper assignment of interest, negligence, gross negligence, willful misconduct, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, breach of fiduciary duty, conversion, aiding and abetting, civil conspiracy, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful recoupment, wrongful setoff, violations of statutes and regulations of governmental entities,**

**instrumentalities and agencies, equitable subordination, debt re-characterization, substantive consolidation, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of any alleged fiduciary duty, breach of any special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, malpractice, at law or in equity, in contract, in tort, or otherwise, known or unknown, suspected or unsuspected.**

Unless expressly released by the Plan or by an order of the Bankruptcy Court, the Debtor may hold claims against a holder of a Claim or Equity Interest, including but not limited, the following claims and Causes of Action, all of which shall be preserved:

- Preference claims under section 547 of the Bankruptcy Code;
- Fraudulent transfer and other avoidance claims arising under sections 506, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code and various state laws;
- Unauthorized post-petition transfer claims including, without limitation, claims under section 549 of the Bankruptcy Code;
- Claims and Causes of Action asserted in current litigation, whether commenced pre- or post-petition; and
- Counterclaims asserted in current litigation;
- Any and all rights the Debtor has in any appeals, including the Westwood Appeal; and
- Any and all claims against Cherry Peterson Landry Albert LLP (and any other successor thereto), including claims for malpractice and negligence.

The Debtor's failure to identify a claim or Cause of Action herein is specifically not a waiver of any claim or Cause of Action. The Debtor will not ask the Bankruptcy Court to rule or make findings with respect to the existence of any Cause of Action or the value of the entirety of the Estate at the Confirmation Hearing; accordingly, except claims or Causes of Action which are expressly released by the Plan or by an Order of the Bankruptcy Court, the Debtor's failure to identify a claim or Cause of Action herein shall not give to any defense of any preclusion doctrine, including but not limited to, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise), or laches, with respect to claims or Causes of Action which could be asserted against third parties, including holders of Claims against Equity Interests in the Debtor who may be reading this Disclosure Statement and/or casting a Ballot, except where such claims or Causes of Action have been released in the Plan or the Confirmation Order.

In addition, the Debtor expressly reserves the right to pursue or adopt any claim alleged in any lawsuit in which the Debtor is a party.

**PLEASE TAKE NOTICE THAT, WITH THE EXCEPTION OF THOSE CAUSES OF ACTION THAT ARE EXPRESSLY**

**RELEASED OR WAIVED UNDER THE TERMS OF THE PLAN, ALL CAUSES OF ACTION OF THE DEBTOR AND ITS ESTATE, WHETHER OR NOT SPECIFIED HEREIN, WILL BE PRESERVED AND PURSUANT TO THE TERMS OF THE PLAN. THE LACK OF DISCLOSURE OF ANY PARTICULAR CAUSE OF ACTION SHALL NOT CONSTITUTE, NOR BE DEEMED TO CONSTITUTE, A RELEASE OR WAIVER OF SUCH CAUSE OF ACTION, AS THE DEBTOR INTENDS FOR THE PLAN TO PRESERVE ANY AND ALL CAUSES OF ACTION HELD BY THE DEBTOR AND ITS ESTATE AS OF THE EFFECTIVE DATE OF THE PLAN.**

## ARTICLE IV
## FINANCIAL INFORMATION

### 4.1 <u>Assets and Liabilities</u>

The Debtor's assets and liabilities as of the Petition Date are set forth in the Bankruptcy Schedules and reference should be made thereto for information concerning such assets as of the Petition Date. The Debtor's Schedules and the amendments thereto can be found filed as Docket Nos. 16, 17, 91, and 92. The pleadings and documents filed in the Bankruptcy Case are publicly available for viewing between the hours of 8:30 a.m. to 4:30 p.m. at the Bankruptcy Clerk's Office, 1100 Commerce Street, Room 1254, Dallas, Texas 75242 or electronically at pacer.txnb.uscourts.gov for a fee. More specifically, the Debtor had, among other assets: Cash as of the Petition Date in the amount of approximately $4.40 and various causes of action.

Following return of the Denton Property to the Debtor, pursuant to the 9019 Order, the Denton Property will be the Debtor's primary asset. The Debtor intends to satisfy its obligations under the Plan through the sale of the Denton Property.

### 4.2 <u>Other</u>

For a more detailed discussion and analysis of the Debtor's assets and liabilities, reference should be made to the exhibits attached hereto, the Debtor's Bankruptcy Schedules, the Proofs of Claim filed, and the Debtor's Monthly Operating Report.

PLEASE NOTE THAT ANY REVIEW OF THE SCHEDULES MAY NOT PRESENT THE COMPLETE FINANCIAL PICTURE OF THE DEBTOR. THE SCHEDULES MUST BE REVIEWED ALONG WITH, *INTER ALIA*, THE CLAIMS REGISTER AND ANY ORDERS OF THE BANKRUPTCY COURT RELATING SPECIFICALLY TO CLAIMS IN THIS BANKRUPTCY CASE.

## ARTICLE V
## PLAN OVERVIEW

### 5.1    Introduction

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Chapter 11 promotes equality of treatment of creditors and equity security holders who hold substantially similar claims against or interests in the debtor and its assets. In furtherance of these two goals, upon the filing of a petition for relief under Chapter 11, section 362 of the Bankruptcy Code provides for an automatic stay of substantially all acts and proceedings against the debtor and its property, including all attempts to collect claims or enforce liens that arose prior to the commencement of the Bankruptcy Case.

The consummation of a plan is typically the principal objective of a chapter 11 case. A plan sets forth the means for satisfying claims against, and equity interests in, a debtor. Confirmation of a plan by the bankruptcy court makes the plan binding upon the debtor, any issuer of securities under the plan, and any creditors of or equity security holder in the debtor, whether or not such creditor or equity security holder (i) is impaired under or has accepted the plan or (ii) receives or retains any property under the plan. Subject to certain limited exceptions, and other than as provided in the plan itself or the confirmation order, the confirmation order discharges the debtor from any debt that arose prior to the date of confirmation of the plan and substitutes therefore the obligations specified under the confirmed plan.

**THE REMAINDER OF THIS SECTION PROVIDES A SUMMARY OF THE PLAN, AND OF THE CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS UNDER THE PLAN. IT IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PLAN (AS WELL AS THE EXHIBITS ATTACHED THERETO AND DEFINITIONS THEREIN), WHICH IS ATTACHED HERETO AS <u>EXHIBIT A</u>.**

THE PLAN ITSELF AND THE DOCUMENTS REFERRED TO THEREIN CONTROL THE ACTUAL TREATMENT OF CLAIMS AGAINST, AND EQUITY INTERESTS IN, THE DEBTOR UNDER THE PLAN AND WILL, UPON OCCURRENCE OF THE EFFECTIVE DATE, BE BINDING UPON ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, ITS ESTATE, ALL PARTIES RECEIVING PROPERTY UNDER THE PLAN, AND OTHER PARTIES IN INTEREST. IN THE EVENT OF ANY CONFLICT BETWEEN THIS DISCLOSURE STATEMENT, ON THE ONE HAND, AND THE PLAN OR ANY OTHER OPERATIVE DOCUMENT, ON THE OTHER HAND, THE TERMS OF THE PLAN AND/OR SUCH OTHER OPERATIVE DOCUMENT WILL CONTROL.

### 5.2    Summary of the Plan and Proposed Distributions Under the Plan.

The primary purpose of the Plan is to facilitate the resolution and treatment of the Debtor's outstanding Claims, Liens, and Equity Interests. The Plan contemplates the sale of the Debtor's primary asset, the Denton Property, to fund its obligations under the Plan.

Under the Plan, Claims against, and Equity Interests in, the Debtor are placed into Classes.

Certain Claims, including Priority Claims and Administrative Claims, are not classified and, if not paid prior to Confirmation, will receive payment in full in Cash on the distribution date set forth in the Plan as described below.

The table below summarizes the classification and treatment of the prepetition Claims and Equity Interest under the Plan. This summary is qualified in its entirety by reference to provision of the Plan.

| Class | Treatment of Claim/Equity Interest | Estimated Aggregate Amount of Claims or Equity Interests[1] | Proposed Treatment of Allowed Claims or Equity Interests |
|---|---|---|---|
| Class 1: Ad Valorem Secured Claims | Impaired | $147,066.88 | Unless otherwise agreed, each holder of an Allowed Ad Valorem Tax Claim, excluding any penalties, shall receive in full discharge and in exchange for such Allowed Ad Valorem Tax Claim, and the Lien(s) securing the same, Cash in the full amount of their Allowed Claim from the Denton Property Gross Sale Proceeds. Prior to the Denton Property Sale, each holder of an Allowed Ad Valorem Tax Claim shall retain all liens in, to, or against any property of the Debtor and the Estate, such Liens shall continue to apply and attach to the Denton Property (or the proceeds thereof) with the same validity, extent, and priority as otherwise exists pending payment of each Allowed Ad Valorem Tax Claim in full, together with all applicable interest. Upon the payment of each Allowed Ad Valorem Tax Claim in full, together with all applicable interest, each lien securing such Allowed Ad Valorem Tax Claim shall be automatically, and without need for further order, document, or action, released and discharged.<br><br>Estimated Recovery – 100% |
| Class 2: Secured Claims of Dreki Capital, LLC | Impaired | $5.3 Million | In full and final satisfaction, discharge, and release of the Dreki Allowed Claim, Dreki shall agree to subordinate its claims and shall be paid *pari passu* with the Class 6 Claims. |

---

[1] Claims are estimates only and may be subject to all objections. The Debtor reserves all rights regarding the same. Claims included in one class may be properly classified in another class.

| | | | Estimated Recovery – Unknown |
|---|---|---|---|
| Class 3: Claims of Westwood Motorcars, LLC | Unimpaired | Unknown | In full and final satisfaction of the Allowed Westwood Claim, Westwood shall be paid 100% of the amount of the Allowed Westwood Claim from the Westwood Escrow, which shall be funded from the Denton Property Gross Sale Proceeds and retained in the Westwood Escrow pending resolution of the Westwood Appeal and any subsequent appeal, if applicable. Prior to distribution of funds from the Westwood Escrow, Westwood shall retain its liens in, to, or against any property of the Debtor and the Estate, such Liens shall continue to apply and attach to the Denton Property (or the proceeds thereof) with the same validity, extent, and priority as otherwise exists pending payment of the Allowed Westwood Claim in full. Upon the payment in full of the Allowed Westwood Claim, each lien securing the Allowed Westwood Claim shall be automatically, and without need for further order, document, or action, released and discharged. Estimated Recovery – 100% |
| Class 4: Convenience Claims | Impaired | Approx. $45,230.90 | Allowed Convenience Claims shall be paid Cash in the full amount of the Allowed Convenience Claims from the Denton Property Gross Sale Proceeds thirty (30) days following the closing of the Denton Property Sale. Estimated Recovery – 100% |
| Class 5: General Unsecured Claims | Impaired | Approx. $366,521.00 | Except to the extent that a holder of an Allowed General Unsecured Claim and the Debtor or Reorganized Debtor agree to less favorable treatment, the legal, equitable, and contractual rights of the Holders of Allowed General Unsecured Claims are unaltered by the Plan. On and after the Effective Date, except to the extent that a Holder of a General Unsecured Claim agrees to different treatment, the Debtor or Reorganized Debtor, as applicable, shall continue to pay or dispute each General Unsecured Claim in the ordinary course of business as if the Bankruptcy Case has never |

| | | | |
|---|---|---|---|
| | | | been commenced.<br><br>Estimated Recovery – Unknown |
| Class 6: Subordinated Claims of Insiders | Impaired | Approx. $1,271,107.59 | Except to the extent that a holder of an Allowed Claim of Insiders Insider Claim and the Debtor or Reorganized Debtor agree to less favorable treatment, the legal, equitable, and contractual rights of the Holders of Insider Claims are unaltered by the Plan. On and after the Effective Date, except to the extent that a Holder of an Insider Claim agrees to different treatment, the Debtor or Reorganized Debtor, as applicable, shall continue to pay or dispute each Insider Claim in the ordinary course of business as if the Bankruptcy Case has never been commenced.<br><br>Estimated Recovery – Unknown |
| Class 7: Equity Interest Holders | Impaired | N/A | On account of their Class 7 Equity Interests, the Holders of Equity Interests in the Debtor shall (a) retain their interests in in the Debtor (which Interests will become Interests in the Reorganized Debtor post-confirmation).<br><br>Estimated Recovery – Unknown |

**ARTICLE VI**
**SUMMARY OF CERTAIN PLAN PROVISIONS**

**6.1** **Means for Implementation of the Plan**

(a) General Settlement of Claims and Interests. The Plan shall be deemed a motion to approve the good-faith compromise and settlement pursuant to which the Debtor and holders of Claims against and/or Interests in the Debtor settle all Claims, Interests, and Causes of Action pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, on the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims an Interests and controversies resolved pursuant to the Plan. The Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise, settlement, and release of all such Claims, Interests, and Causes of Action, and is fair, and equitable, and reasonable, Unless otherwise specified herring, In accordance with the provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, without any further notice to or action, order, or approval of the Bankruptcy Court, after the Effective Date, the

Reorganized Debtor may compromise and settle all Claims and Causes of Action against, and Interests in, the Debtor and its estate. The compromises, settlements, and releases described herein shall be deemed nonreservable from each other and from all other terms of the Plan. Subject to Article V of the Plan, all distributions made to holders of Allowed Claim in any Class are intended to be and shall be final.

       (i) <u>Order Approving Settlement Between Debtor and Dreki Capital LLC</u>. The Plan incorporates the Court's Order Approving Settlement and Compromise of Fraudulent Transfer and Wrongful Foreclosure Claims Pursuant to Federal Rule of Bankruptcy Procedure 9019, entered on July 24, 2020 as Docket No. 183 (the "9019 Order"). Pursuant to the 9019 Order, the prior foreclosure sale of the Denton Property by Dreki was rescinded, vacated, and deemed null and void as of August 6, 2019, the Foreclosure-Sale Deed filed on August 28, 2019 in the real property records of Dallas County, Texas as instrument number 201900228744 was voided and held to be without effect, and Dreki was ordered to reconvey and re-transfer the Denton Property to the Debtor within ten (10) days of the Order becoming a Final Order.

    (b)    <u>Sale of Denton Property</u>. The Reorganized Debtor shall market for sale the Denton Property, and shall use the proceeds from the sale of the Denton Property first to the pay the Denton Property Closing Costs and any Allowed Class 1 (*Secured Ad-Valorem*) claims. The sale proceeds thereafter remaining (the "Denton Property Gross Sale Proceeds") shall next be used to fund the Westwood Escrow, an amount necessary to pay Administrative Expenses, including Professional Claims, and an amount necessary to pay Class 4 (Convenience Claims). Any Denton Property Gross Sale Proceeds remaining after funding of the Westwood Escrow in accordance with <u>section 6.3 of this Plan</u>, payment of Administrative Expenses, including Professional Claims, and payment of Class 4 Claims may be used by the Reorganized Debtor without any restriction.

       (i)    <u>Sale Agreement and Closing Documents</u>. Subject to and in connection with the occurrence of the Effective Date, the Debtor shall take all such action as may be necessary or appropriate to effectuate the Denton Property Sale on the terms and subject to the conditions set forth in the Sale Agreement. Upon the occurrence of the Effective Date, the Debtor shall be authorized to execute the Sale Agreement and related documents and consummate the transactions contemplated therein.

       (ii)    <u>Conflicts</u>. In the event of any conflict whatsoever between the terms of the Plan and the Sale Agreement, the terms of the Plan shall control, and the Plan shall be deemed to incorporate in their entirety the terms, provisions, and conditions of the Sale Agreement.

    (c)    <u>Westwood Escrow</u>.

       (i)    <u>Creation</u>. On or before the closing of the Denton Property Sale, the Debtor or Reorganized Debtor, as applicable, shall establish an escrow reserve

account for the benefit of Westwood and its Class 3 Claim (the "Westwood Escrow").

(ii)     <u>Funding Upon Sale</u>. Contemporaneously with the closing of the sale of the Denton Property, the Debtor or Reorganized Debtor, as applicable, shall deposit or cause to be transferred into the Westwood Escrow, from the Denton Property Gross Sale Proceeds, an amount equal to the Westwood Escrow Amount. Such amounts shall remain in the Westwood Escrow until the amount of Westwood Claim is finally determined in accordance with its treatment in <u>section 5.3</u> of this Plan.

(iii)     <u>Transfer and Attachment of Lien</u>.    Further, upon the closing of the sale of the Denton Property, Westwood's lien granted pursuant to <u>Section 5.3.3</u> of the Plan shall attach to the amounts transferred and deposited into the Westwood Escrow.

(iv)     <u>Disposition of Westwood Escrow</u>.    Upon the amount of Westwood's Claim being determined in accordance with the treatment in <u>section 5.3</u> of the Plan (*i.e.,* a Final Order is entered in the Westwood Appeal), the Debtor or Reorganized Debtor, as applicable, shall transfer to Westwood within five (5) days of the Final Order determining such amount, Cash from the Westwood Escrow equal to the lesser of (a) the Westwood Escrow Amount, and (b) the amount of Westwood's Claim as determined consistent with <u>section 5.3</u> of the Plan. In the event that the amount distributed from the Westwood Escrow on account of Westwood's Claim is less than the Westwood Escrow Amount, any amounts remaining in the Westwood Escrow shall be released to the Debtor or Reorganized Debtor, as the case may be, and the Debtor or Reorganized Debtor may use such amounts without any restriction.

(v)     <u>Debtor's Non-Access to Escrowed Funds</u>.    For the avoidance of doubt, neither the Debtor nor the Reorganized Debtor shall have access or may use the amounts deposited in the Westwood Escrow until such time as (a) there has been a disposition of Cash on account of the Westwood Claim in conformance with <u>section 6.3.4</u> of the Plan, or (b) Westwood agrees in writing that such amounts shall be transferred.

(d)     <u>Continued Existence of Debtor Post-Confirmation</u>.  Except as otherwise provide in this Plan, the Debtor shall continue to exist after the Effective Date as the Reorganized Debtor in accordance with the applicable laws of Texas. On or after the Effective Date, without prejudice to the rights of any party to a contract or other agreement, the Reorganized Debtor may, in its sole discretion, take such action as permitted by applicable law and the Reorganized Debtor's organizational documents as the Reorganized Debtor may determine is reasonable and appropriate.

(e)     <u>Post Effective Date Management.</u>    The Reorganized Debtor shall continue to exist after the Effective Date in accordance with the applicable laws of the State of

Texas, in which it is incorporated, for the purposes of operating the Property and satisfying its obligations under the Plan. The Reorganized Debtor shall be owned by Richard Boyd and shall continue be managed by Richard Boyd. Post-confirmation, Mr. Boyd's compensation shall be commensurate and consistent with market standards.

**6.2** **Conditions to Effective Date.** The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied in accordance with the terms hereof:

- The Confirmation Order shall have become a Final Order;
- All actions, documents, and agreements necessary to implement the Plan shall have been effected or executed;
- The Debtor and purchaser of the Denton Property shall have received any and all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are necessary to implement the Plan and are required by law, regulation, or order; and
- All conditions precedent to consummation of the Denton Property Sale, including any conditions precedent that may be required under the applicable sale document, shall have been satisfied or waived in accordance with the Sale Agreement.

*provided, however*, that each of the conditions precedent provided herein may be waived, in whole or in part, by written consent of the Debtor and any counter-party to any agreements or documents specified herein without notice or order of the Bankruptcy Court.

**6.3** **Treatment of Executory Contracts and Unexpired Leases**

All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) which are not expressly assumed or rejected on or before the Effective Date, or not otherwise specifically treated in this Plan or in the Confirmation Order, shall be deemed to have been rejected as of the Petition Date. The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. The listing by the Debtor in his Schedules of a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor that such contract or lease is an executory contract or unexpired lease of the Debtor, or that the Debtor or the Estate has any liability thereunder.

Any Claim based upon rejection of an executory contract or unexpired lease under the Plan must be Filed with the Bankruptcy Court and served on the Reorganized Debtor such that the Claim is actually received within thirty (30) days of the entry of an Order rejecting such contract or lease. All Allowed Claims for rejection damages, unless otherwise specifically provided for or addressed in this Plan, shall be treated as Class 7 General Unsecured Claims. Any Claim not Filed within such time will be forever barred from assertion against the Debtor or the Estate.

The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time prior to ninety (90) days after the Confirmation Date.

### 6.4 Procedures for Resolving Disputed, Contingent and Unliquidated Claims

(a)     Standing.  In addition to all other parties that may otherwise have standing to object to claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

(b)     Effect of Bar Date.  In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed Claim, and did not file a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

(c)     Amendments to Claims; Claims Filed After the Effective Date.  Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Effective Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any Claim filed with the Bankruptcy Court after the Effective Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.  Notwithstanding the foregoing, and for the avoidance of doubt, the Holder of a Secured Tax Claim may amend any timely filed proof of claim, where such proof of claim includes an estimated amount for *ad valorem* taxes, in order to assert actual taxes for said year(s), at any time prior to substantial consummation of the Plan.

(d)     Objection Deadline.  Within ninety (90) days from the Effective Date, unless such date is extended by Order of the Court after notice and hearing, the Reorganized Debtor may file with the Court objections to Claims and interests and shall serve a copy of each such objection upon the Holder of the Claim or interest to which such objection pertains.  Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to.  Any Undetermined Claim may be litigated to Final Order.  The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of any further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date.  Nothing in this Plan extends the Bar Date set in the Bankruptcy Case or grants any Creditor any greater rights with respect to a late-filed Claim than such Creditor otherwise has.  Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle, or withdraw objections to contested Claims.

(e)     Creditor Response to Objection.  With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and

the objecting party no later than thirty (30) days from the date of service of any such objection. Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor. Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

(f)      No Payment Pending Allowance.  Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(g)      Allowance of Claims.  At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.

(h)      Estimation of Claims.  The Debtor or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim.  All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another.  Claims may be estimated subsequently and compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

**6.5      Provisions Governing Distributions Generally.**

a)      Distributions. The Reorganized Debtor shall make Distributions to the holders of Allowed Claims, on the terms set forth in this Plan and subject to the availability of Cash.

b)      Record Date for Claims. The record date for Distributions to Allowed Claims under the Plan shall be the date the Bankruptcy Court enters its Order approving the Disclosure Statement. For purposes of Distribution to holders of Allowed Claims, the Reorganized Debtor will rely on the Claims Register maintained by the Bankruptcy Court

except to the extent a notice of transfer of Claim has been Filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001.

c)  Interim and Final Distributions of Cash. The Reorganized Debtor shall make Cash Distributions to the holders of Allowed unclassified Claims and Claims in Classes 1 through 4 under the terms set forth in the Plan.

d)  Form of Distributions. Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer, at the option of the Debtor.

e)  Conditions to Distributions; Warranty of Entitlement. Each and every Creditor who receives and accepts a Distribution under the Plan on account of an Allowed Claim is deemed to have warranted to the Reorganized Debtor that such Creditor is the lawful holder of the Allowed Claim, is authorized to receive the Distribution, and that there are no outstanding commitments, agreements or understandings, express or implied, that may or can, in any way, defeat or modify the right of the Creditor to receive the Distribution.

f)  Withholding Taxes. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding any other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

g)  Setoffs. Except as otherwise expressly provided in the Plan and pursuant to Sections 502(d) or 553 of the Bankruptcy Code or any applicable non-bankruptcy law, the Reorganized Debtor may upon application and approval by the Bankruptcy Court, setoff against any Distribution to be made pursuant to the Plan on account of an Allowed Claim any claims, rights or Causes of Action held by the Reorganized Debtor against the holder of the Allowed Claim, or in relation to the Allowed Claim; *provided, however*, that neither the failure to effect such a setoff nor the allowance of any Claim shall constitute a waiver or release by the Reorganized Debtor of any such claims, rights or Causes of Action. If the Reorganized Debtor fails to setoff against a Claim and seeks to collect from the holder of such Claim after Distribution to that holder pursuant to the Plan, the Reorganized Debtor shall be entitled to full recovery on the claims of the Debtor or its Estate, if any, against the holder of such Claim.

h)      Rounding. Where the calculation of a distribution results in a fraction of a cent owing, the calculation shall be rounded down to the nearest whole cent for purposes of paying (or reserving) the Distribution.

i)      *De Minimis* Distributions. Notwithstanding any provision of the Plan to the contrary, no Distribution of less than twenty-five dollars ($25.00) shall be made on an Allowed Claim, unless such Distribution shall be a final Distribution.

j)      Undeliverable and Unclaimed Distributions. Any Person that is entitled to receive a Distribution of Cash under the Plan but fails to cash a check within ninety (90) days of its issuance shall be entitled to receive a reissued check from the Reorganized Debtor for the amount of the original check, without any interest, if such Person requests the Reorganized Debtor to reissue such check and provides such documentation as may be requested to verify that such Person is entitled to such check prior to the later of: (i) the first anniversary of the Effective Date; or (ii) six (6) months after such Person's Claim becomes an Allowed Claim.  After the expiration of the applicable deadline to request a check to be reissued, the Person who fails to cash a check within ninety (90) days of its issuance shall not be entitled to receive any Distribution under the Plan on account of the Claim that was attempted to be paid.  If the Distribution to any holder of an Allowed Claim is returned to the Reorganized Debtor as undeliverable, no further Distributions will be made to such holder unless and until the Reorganized Debtor is notified in writing of such holder's current address; *provided*, *however*, a claim for an undeliverable Distribution must be made within one hundred eighty (180) days following the date of issuance of the original Distribution. After such date, all unclaimed property shall revert to the Reorganized Debtor for further disbursement in accordance with the Plan, and the Claim of any holder or successor to such holder with respect to such property shall be discharged, disallowed, and forever barred notwithstanding any federal or state escheatment laws to the contrary. The Reorganized Debtor has no obligation to independently undertake any investigation to determine the whereabouts of any holder of an Allowed Claim.

k)      Disputed Distributions. No Distribution will be made on account of a Disputed Claim unless and until it becomes Allowed. Upon a request for estimation, the Bankruptcy Court will determine what amount of Cash from the initial and subsequent Distributions is sufficient to reserve on account of any Disputed Claim not otherwise treated in the Plan pursuant to Section 502 of the Bankruptcy Code or applicable law; in which case, the amount so determined by the Bankruptcy Court shall be deemed the Allowed amount of such Disputed Claims for purposes of the Plan or, in lieu thereof, the Bankruptcy Court will determine the maximum amount to which such Claim may be ultimately Allowed.  Upon motion by a party in interest, the Bankruptcy Court may determine the appropriate amount of any reserves required in connection with a Disputed Claim.  In the event that a dispute arises as to the rightful owner of an Allowed Claim, or a Distribution thereon, the Reorganized Debtor may either (a) deposit the Distribution into the Disputed Claims Reserve until a determination is made as to the rightful owner of the Distribution by the Bankruptcy Court or by written agreement between each of the Persons making claim to the Distribution, or (b) interplead the Distribution into the registry of the Bankruptcy Court or such other court having jurisdiction over the Disputed Distribution

and the Persons making claim to such Distribution, reserving the right to assert any and all claims that the Reorganized Debtor may have in relation to such interpleader action; *provided, however,* that once segregated or interplead, interest shall cease to accrue on an Allowed Claim.

## 6.6 <u>Effects of Confirmation</u>

a) <u>Discharge</u>. Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including but not limited to demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged, and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

b) <u>Legal Binding Effect</u>. Upon the Effective Date, the Plan and each of its provisions shall be binding on the the Debtor, the Reorganized Debtor, all Creditors, all Equity Interest holders, and all Persons acquiring property under the following, whether or not they voted to accept the Plan, whether or not they had a right to vote on the Plan, whether or not any Claim or Equity Interest held by any of them is Impaired under the Plan, whether or not any Claim or Equity Interest held by any of them is Allowed in full, only in part, or Disallowed in full, and whether or not a Distribution is made to any of them under the Plan. On and after the Effective Date, except as expressly provided in the Plan, all Holder of Claims, Liens and Equity Interests shall be precluded from asserting any Claim, Cause of Action or Liens against the Debtor or the Estate, or their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

c) <u>Notice of the Effective Date</u>. On or before ten (10) Business Days after occurrence of the Effective Date, the Reorganized Debtor shall mail or cause to be mailed to all holders of Claims a notice that informs such holders of the following: (a) entry of the Confirmation Order; (b) occurrence of the Effective Date; (c) the Administrative Claim Bar Date; (d) Professional Claim Bar Date; and (e) such other matters that the Reorganized Debtor deems appropriate.

d)      Injunction Against Interference with Plan. EXCEPT AS PROVIDED HEREIN, ON AND AFTER THE CONFIRMATION DATE, ALL CREDITORS AND PERSONS ACTING IN CONCERT WITH THEM ARE ENJOINED AND RESTRAINED PURSUANT TO SECTION 105 OF THE CODE FROM TAKING ANY ACTION TO CORRECT OR ENFORCE ANY CLAIM DIRECTLY OR INDIRECTLY AGAINST THE REORGANIZED DEBTOR IN ANY MANNER INCONSISTENT WITH THE TERMS CONTAINED IN THE PLAN.

e)      Automatic Stay.      The automatic stay provided in Section 362 of the Bankruptcy Code, shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

f)      Exculpations. NEITHER THE DEBTOR'S PROFESSIONALS, NOR ANY OF THEIR RESPECTIVE PRESENT OFFICERS, EMPLOYEES, AGENTS, REPRESENTATIVES,      ADVISORS,      AFFILIATES,      UNDERWRITERS      OR INVESTMENT BANKERS, NOR ANY OTHER PROFESSIONAL PERSONS EMPLOYED BY ANY OF THEM (COLLECTIVELY, THE "EXCULPATED PARTIES"), SHALL HAVE OR INCUR ANY LIABILITY TO ANY PERSON FOR ANY ACT TAKEN OR OMISSION IN CONNECTION WITH OR RELATED TO FORMULATING,      NEGOTIATING,      IMPLEMENTING,      CONFIRMING      OR CONSUMMATING THE PLAN, THE DISCLOSURE STATEMENT, EXCEPT FOR WILLFUL MISCONDUCT. THE EXCULPATED PERSONS SHALL HAVE NO LIABILITY, EXCEPT FOR WILLFUL MISCONDUCT, TO THE DEBTOR, ANY CREDITOR, ANY EQUITY INTEREST HOLDER, AND ANY OTHER PARTY IN INTEREST IN THE BANKRUPTCY CASE, OR ANY OTHER PERSON FOR ACTIONS TAKEN OR NOT TAKEN UNDER THE PLAN, IN CONNECTION HEREWITH OR WITH RESPECT THERETO, OR ARISING OUT OF THEIR ADMINISTRATION OF THE PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THE PLAN INCLUDING, WITHOUT LIMITATION, FAILURE TO OBTAIN CONFIRMATION OR TO SATISFY ANY CONDITION OR CONDITIONS, OR REFUSAL TO WAIVE ANY CONDITION OR CONDITIONS, TO THE OCCURRENCE OF THE EFFECTIVE DATE, AND IN ALL RESPECTS SUCH EXCULPATED PERSONS SHALL BE ENTITLED TO RELY UPON THE ADVICE OF COUNSEL WITH RESPECT TO THEIR DUTIES AND RESPONSIBILITIES UNDER THE PLAN.

## 6.7     Retention of Jurisdiction

Under the Plan, notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date of the Plan, the Bankruptcy Court shall retain jurisdiction, to fullest extent legally permitted, over the Bankruptcy Case, all proceedings arising under, arising in or related to the Bankruptcy Case, the Confirmation Order, the Plan and adversary proceedings related to the Bankruptcy Case. Some specific types of disputes and proceedings that the Bankruptcy Court shall retain jurisdiction over are identified in Article XI of the Plan.

## ARTICLE VII
## CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN

**7.1**    **Tax**

**THE PLAN AND ITS RELATED TAX CONSEQUENCES ARE COMPLEX. THERE ALSO MAY BE STATE, LOCAL OR OTHER TAX CONSIDERATIONS APPLICABLE TO EACH CREDITOR. CREDITORS ARE URGED TO CONSULT THEIR OWN TAX ADVISORS AS TO THE CONSEQUENCES OF THE PLAN TO THEM UNDER FEDERAL AND APPLICABLE STATE, LOCAL AND OTHER TAX LAWS. NOTHING IN THIS DISCLOSURE STATEMENT OR IN THE PLAN IS MEANT TO PROVIDE ANY TAX ADVICE TO ANY CREDITORS, INTEREST HOLDER OR PARTY IN INTEREST.**

## ARTICLE VIII
## RESERVED

## THE BEST INTERESTS OF CREDITORS TEST

**9.1**    **Best Interests of Creditors Test**

The Bankruptcy Code requires that the Bankruptcy Court find that the Plan is in the best interest of all holders of Claims and Equity Interests that are Impaired by the Plan and that have not accepted the Plan as a requirement to confirm the Plan.  The "best interests" test, as set forth in section 1129(a)(11) of the Bankruptcy Code, requires the Bankruptcy Court to find either that all members of an Impaired Class of Claims or Equity Interests have accepted the Plan or that the Plan will provide a member who has not accepted the Plan with a recovery of property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

To calculate the probable distribution to members of each Impaired Class of Claims and Equity Interest if the Debtor was liquidated under Chapter 7, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the disposition of the Debtor's assets if liquidated in a Chapter 7 case under the Bankruptcy Code.  This "liquidation value" would consist primarily of the proceeds from a forced sale of the Debtor's assets by a chapter 7 trustee.

The amount of liquidation value available to holders of unsecured Claims against the Debtor would be reduced by, first, the claims of secured creditors (to the extent of the value of their collateral), and by the costs and expenses of liquidation, as well as by other administrative expenses and costs of the chapter 7 case.  Cost of a liquidation of the Debtor under chapter 7 of the Bankruptcy Code would include the compensation of a chapter 7 trustee and his or her counsel and other professionals, asset disposition expenses and litigation costs.  The liquidation itself would trigger certain priority payments that otherwise would be due in the ordinary course of business. Those priority claims would be paid in full from the liquidation proceeds before the balance would be made available to pay unsecured Claims or to make any distribution to Holders

of Equity Interests.

Under a chapter 7 liquidation, no junior class of Claims or Equity Interests may be paid unless all classes of Claims or Equity Interests senior to such junior class are paid in full. Section 510(a) of the Bankruptcy Code provides that subordination agreements are enforceable in a bankruptcy case to the same extent that such subordination is enforceable under applicable non-bankruptcy law. Therefore, no class of Claims or Equity Interests that is contractually subordinated to another class would receive any payment on account of its Claims or Equity Interests, unless and until such senior classes were paid in full.

Once the Bankruptcy Court ascertains the recoveries in liquidation of the Debtor's secured and priority creditors, it would then determine the probable distribution to unsecured creditors from the remaining available proceeds of the liquidation. If this probable distribution has a value greater than the value of distributions to be received by the unsecured creditors under the Plan, then the Plan is not in the best interests of creditors and cannot be confirmed by the Bankruptcy Court. As shown in the Liquidation Analysis described in Section 9.2 below, the Debtor believes that each member of each Class of Impaired Claims and Equity Interests will received at least as much, if not more, under the Plan as it would receive if the Debtor was liquidated.

**9.2** **Liquidation Analysis**

The Debtor believes that under the Plan, all holders of impaired Claims and Interests will receive property with a value not less than such holder would receive in a liquidation under chapter 7 of the Bankruptcy Code, and that resolution under the Plan results in a superior recovery to creditors. If the Bankruptcy Case were converted to Chapter 7, it is difficult to exactly predict the timeline and recovery creditors would receive, due to the contingent nature of Class 2 and 3 secured claims secured by liens on the Denton Property.

The Debtor's belief is based primarily on (i) consideration of the effects that a chapter 7 liquidation would have on the ultimate proceeds available for distribution to holders of impaired Claims and Interests and (ii) the Liquidation Analysis set forth below.

| DEBTOR'S LIQUIDATION ANALYSIS | |
|---|---|
| Denton Property | $3,000,000.00 |
| **Total Assets for Distribution** | **$3,000,000.00** |
| Ad Valorem Secured Claims | $147,066.88 |
| Closing Costs and Broker Fees Related to Sale | $180,000.00 |
| Net Proceeds to First Lien Lender* | $2,672,933.12 |
| Chapter 7 Trustee Commission (estimate) | $100,000.00 |
| Chapter 7 Cost of Administration (estimate) | $150,000.00 |
| Chapter 11 Costs of Administration | $175,000.00 |
| **Available for Unsecured Claims** | **$0.00** |
| **Percent Distribution to Unsecured Creditors** | **0%** |

*The Debtor and Westwood dispute who has a first priority secured claim to the proceeds of the Property. For purposes of this liquidation analysis, the priority of the parties is irrelevant because

the aggregate sum of the secured claims are greater than the amount of the liquidation value of the Denton Property. Accordingly, in a chapter 7 liquidation, any creditors other than the secured creditors would likely receive zero distributions. Debtor simply states that whomever Subject to the Claim Allowance process and any future lien priority determination by this Court in the Adversary Proceeding.

The Debtor believes that any liquidation analysis is speculative, as it is necessarily premised on assumptions and estimates which are inherently subject to significant uncertainties and contingencies, many of which are inherently subject to significant uncertainties and contingencies, many of which would be beyond the control of the Debtor. The Liquidation Analysis provided is solely for the purpose of disclosing to holders of Claims and Equity Interests the effect of a hypothetical chapter 7 liquidation of the Debtor, subject to the assumption set forth therein. There can be no assurance that a bankruptcy court will accept the Debtor's conclusions or concur with such assumptions in making its determinations under section 1129(a)(7) of the Bankruptcy Code.

## ARTICLE X
## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

The Debtor believes that the Plan affords holders of Claims and Equity Interests the potential for the greatest realization on the Debtor's assets and, therefore, is in the best interest of such holders.  If, however, enough acceptances received from Classes 1, 2, 4, and 5 sufficient for the Debtor to confirm the Plan are not received, or the Plan is not subsequently confirmed and consummated, the theoretical alternatives include: (i) formulation of an alternative plan or plans or (ii) liquidation of the Debtor under chapter 7 of the Bankruptcy Code.

### 10.1     Alternative Plan(s)

If enough acceptances to confirm the Plan are not received or if the Plan is not confirmed, the Debtor (or, if the Debtor's exclusive period in which to file and solicit acceptances of a reorganization plan has expired, any other party in interest) could attempt to formulate and propose a different plan of reorganization or plans of liquidation.

Additionally, with respect to an alternative plan, the Debtor has explored various other alternatives to the plan as proposed and the Debtor believes that the Plan, as described herein, enables holders of Claims and Equity Interests to realize the greatest possible value under the circumstances, and that, as compared to any alternative plan, the Plan has the greatest chance to be confirmed and consummated.

### 10.2     Liquidation Under Chapter 7

Proceedings under chapter 7 would impose significant additional monetary and time costs on the Debtor's Estate.  Under Chapter 7, a trustee would be elected or appointed to administer the Estate, to resolve pending controversies, including Disputed Claims against the Debtor and Claims of the Estate against other parties, and to make distributions to Holders of Claims.  A chapter 7 trustee would be entitled to compensation in accordance with the scale set forth in the Bankruptcy

Code, and the trustee would also incur significant administrative expenses. The results of a hypothetical chapter 7 liquidation are included in the Debtor's Liquidation Analysis.

**10.3** **Dismissal**

Dismissal of the Bankruptcy Case would most likely lead to the same unsatisfactory, or worse, results as a chapter 7 liquidation.

**10.4** **Other Alternatives**

The Debtor has attempted to set forth alternatives to the proposed Plan. However, the Debtor must caution Creditors that a vote must be for or against the Plan. The vote on the Plan does not include a vote on alternatives to the Plan. There is no assurance what turn the proceedings will take if the Plan fails to be accepted. If you believe one of the alternatives is preferable to the Plan and you wish to urge it upon the Court, you should consult counsel.

**ARTICLE XI**
**CERTAIN RISK FACTORS TO BE CONSIDERED**

PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN, ALL HOLDERS OF CLAIMS AND EQUITY INTERESTS SHOULD READ AND CAREFULLY CONSIDER THE RISK FACTORS SET FORTH BELOW, AS WELL AS ALL OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT. THESE RISK FACTORS SHOULD NOT, HOWEVER, BE REGARDED AS CONSTITUTING THE ONLY RISKS INVOLVED IN CONNECTION WITH THE PLAN AND ITS IMPLEMENTATION. ADDITIONAL RISKS AND UNCERTAINTIES NOT PRESENTLY KNOWN TO THE DEBTOR OR THAT THEY CURRENTLY DEEM IMMATERIAL MAY ALSO HARM ITS ESTATE.

**11.1** **Certain Bankruptcy Law Considerations**

    (a)    Objections to Plan and Confirmation

Section 1129 of the Bankruptcy Code provides certain requirements for a Chapter 11 Plan to be confirmed. Parties-in-interest may object to confirmation of a plan based on an alleged failure to fulfill these requirements or other reasons. The Debtor believes that the Plan complies with the requirements of the Bankruptcy Code. Further, the Debtor has worked to obtain and negotiate consensual treatment with each of the main creditor groups in this case such that any objections to the Plan should be minimal.

    (b)    Objections to Classification of Claims and Equity Interests

Section 1122 of the Bankruptcy Code provides that a plan of reorganization may place a claim or an interest in a particular class only if such claim or interests is substantially similar to the other claims or interests in such class.

The Debtor believes that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code because each class of Claims and Equity Interests contain Claims or Equity Interests that are substantially similar to the other Claims and Equity Interests in each such class.

(c)    <u>Insufficient Acceptances</u>

For the Plan to be confirmed, each Impaired Class of Claims is given the opportunity to vote to accept or reject the Plan. With regard to such Impaired voting Classes, the Plan will be deemed accepted by a Class of Impaired Claims if the Plan is accepted by Claimants of such Class actually voting on the Plan who hold at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the total Allowed Claims of the Class voted. Only those members of a Class who vote to accept or reject the Plan will be counted for voting purposes. The Debtor intends to request confirmation pursuant to the cramdown provisions in section 1129(b) of the Bankruptcy Code, which will allow confirmation of the Plan regardless of the fact that a particular Class of Claims has not accepted the Plan. However, there can be no assurance that any Impaired Class of Claims under the Plan will accept the Plan or that the Debtor would be able to use the cramdown provisions of the Bankruptcy Code for confirmation of the Plan.

(d)    <u>Claims Estimation</u>

There can be no assurance that the estimated amount of Claims and Equity Interests are correct, and the actual Allowed amounts of Claims and Equity Interests may differ from estimates. The estimated amounts are subject to certain risks, uncertainties and assumptions. Should one or more of these risks or uncertainties materialize or should underlying assumptions prove incorrect, the actual Allowed amounts of Claims and Equity Interests may vary from those estimated therein. However, in terms of numbers of claims, there is a relatively small amount of Claims. Further, the Debtor is in constant contact with a number of the vendors who constitute the majority of the Unsecured Claims and thus the Debtor are confident in their estimates and assumptions.

## 11.3    **Estimated Recovery Risks**

The Plan will be funded through Cash on hand, the Denton Property Gross Sale Proceeds, and payments over time from the Reorganized Debtor.

Although no guarantees can be made about the exact future performance of the Reorganized Debtor, the Reorganized Debtor believes that it will be able to fund and pay all obligations required by the Plan.

**ARTICLE XII**
**<u>VOTING PROCEDURES AND REQUIREMENTS</u>**

## 12.1    **<u>Voting Deadline</u>**

Each Creditor holding a Claim which entitles the Creditor to vote on the Plan has been provided a Ballot along with this Disclosure Statement. If a Creditor holds Claims in more than one Class entitled to vote under the Plan, the Creditor may indicate his vote in each Class with the same Ballot, or the Creditor may request an additional Ballot for each additional Class it is entitled to vote. The Ballot is to be used by the Creditor to accept or reject the Plan and to make any elections that are available to the Creditor as indicated by the Ballot.

To ensure that a Ballot is deemed timely and considered by the Balloting Agent, which shall be the Debtor's attorneys, Pronske & Kathman, P.C., a Creditor must: (a) carefully review the Ballot and the instructions set forth thereon; (b) provide all of the information requested on the Ballot; (c) sign the Ballot; and (d) return the completed and signed Ballot to the Balloting Agent by the Voting Deadline. By order of the Bankruptcy Court, the "Voting Deadline" is 4:00 p.m. (CST), on _____, 2020  Therefore, in order for a Ballot to be counted for voting purposes and any applicable election, the completed and signed Ballot must be received at the address specified below by no later than the Voting Deadline.

**DEADLINE:**  Must be **RECEIVED** by 4:00 p.m., Central Time
on _____, 2020

Addressed to:
Pronske & Kathman, P.C.
Attn: Jason P. Kathman
2701 Dallas Pkwy., Suite 590
Plano, Texas 75093
Facsimile: 214.291.2665

### 12.2  Creditors Solicited to Vote

Each Creditor holding a Claim in a Class that is Impaired under the Plan is being solicited to vote on the Plan. As to any Claim for which a proof of claim was filed and as to which an objection has been lodged, however, if such objection is still pending as of the Voting Deadline, the Creditor's vote associated with such Claim will not be counted to the extent of the objection to the Claim, unless and to the extent the Bankruptcy Court temporarily allows the Claim upon motion by such Creditor in an amount determined by the Bankruptcy Court. Such motion must be heard and determined by the Bankruptcy Court prior to the date and time scheduled by the Bankruptcy Court for a hearing determining the confirmation of the Plan. Further, the Creditor's vote may be disregarded if the Bankruptcy Court determines that the Creditor's acceptance or rejection of the Plan was not solicited or procured in good faith or in accordance with the provision of the Bankruptcy Code.

### 12.3  Definition of Impairment

Pursuant to section 1124 of the Bankruptcy Code, a Class of Claims is Impaired under a Plan unless, with respect to each Claim of such Class, the plan does at least one of the following two (2) things:

1.   leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim; or

2.   notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default:

    (a)   cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

    (b)   reinstates the maturity of such claim as it existed before the default;

    (c)   compensates the holder of such Claim for damages incurred as a result of reasonable reliance on such contractual provision or applicable law; and

    (d)   does not otherwise alter the legal, equitable, or contractual rights to which such claim entitles the holder of such Claim.

The Plan identifies the classes of Creditors and Interests that the Debtor believe are Impaired or unimpaired under the Plan. The Plan cannot and does not change the law on what is an Impaired class and, to the extent a Creditor disagrees with the Debtor's identification of Impaired or unimpaired classes, the Creditor may object to the Plan and the Bankruptcy Court will decide the dispute.

### 12.4   Classes Impaired Under the Plan

Classes 1, 2, 4, 5, 6 and 7 of the Plan are Impaired. Therefore, the Holders of Claims in those Classes are being solicited for votes in favor of the Plan; *provided, however*, the votes in Classes 2, 6, and 7 will not be counted toward satisfaction of section 1129(a)(10).

With respect to the foregoing, the Debtor specifically reserves its right to determine and contest, if necessary: (a) the Impaired or Unimpaired status of a Class under the Plan; and (b) whether any Ballots cast by Creditors holding Claims within such a Class should be counted for purposes of confirmation of the Plan.

### 12.5   Votes Required for Class Acceptance

Pursuant to the Bankruptcy Code, a Class of Claims under the Plan shall be deemed to have accepted the Plan if the Plan is accepted by Creditors holding at least two-third (2/3) in amount and more than half (1/2) in number of the Claims within such Class who are entitled to vote and who actually vote using a properly completed and signed Ballot which is returned to the Balloting Agent by no later than the Voting Deadline. It is important to note that, pursuant to the Bankruptcy Code, a Class vote in favor of the Plan will be binding even on those creditors in the Class who vote against the Plan, so long as the requisite voting percentages are obtained in favor of the Plan.

### 12.6    Specific Considerations in Voting

While the Plan provides for certain payments at Confirmation, such payments will only apply to Allowed Claims including Claims arising from defaults. Under the Bankruptcy Code, a Claim may not be paid until it is Allowed. A Claim will be Allowed in the absence of objection.

A Claim, including a Claim arising from default, which has been objected to will be heard by the Court at a regular, evidentiary hearing and Allowed in full or in part or disallowed. While the Debtor bears the principal responsibility for Claim objections, any interested party, including Creditors, may file claim objections. Accordingly, payment on some Claims, including Claims arising from defaults, may be delayed until objections to such Claims are ultimately settled. Parties should also read and consider the risk factors discussed and analyzed in Article XI of this Disclosure Statement.

## XIII.  MISCELLANEOUS PROVISIONS

### 13.1    Disclosures Required by the Bankruptcy Code

The Bankruptcy Code requires disclosure of certain facts:

1)    There are no payments made or promises of the kind specified in section 1129(a)(4) of the Bankruptcy Code which have not been disclosed to the Court.

2)    Counsel to the Debtor has advised the Debtor that the Debtor will require legal services in connection with this case after confirmation which will require reimbursement.  Debtor may continue to use Pronske & Kathman, P.C., as counsel after confirmation.

### 13.2.    Certain Rights Unaffected

Except as otherwise provided in the Plan, any rights or obligations which the Debtor's Creditors may have amongst them as to their respective claims or the relative priority or subordination thereof are unaffected.

### 13.3    Binding Effect

As of the Effective Date, the Plan shall be binding upon and inure to the benefit of the Debtor, Reorganized Debtor, the Holders of the Claims, and their respective successors and assigns.

### 13.4    Notices

All notices, requests or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing, provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested, and sent to the following parties, addressed to:

**Debtor:**

Virtuolotry, LLC
25 Highland Park Village
Suite 100-563
Dallas, Texas. 75205

**Debtor's Counsel:**

Jason P. Kathman
Megan F. Clontz
PRONSKE & KATHMAN, P.C.
2701 Dallas Parkway, Suite 590
Plano, Texas 75093
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier

All notices and request to holders of Claims and Interests shall be sent to them at the address listed on the last-filed proof of claim and if no proof of claim is filed, at the address listed in the Debtor's Schedules.

**13.5    Injunctive Relief**

**EXCEPT AS PROVIDED HEREIN, ON AND AFTER THE CONFIRMATION DATE, ALL CREDITORS AND PERSONS ACTING IN CONCERT WITH THEM ARE ENJOINED AND RESTRAINED PURSUANT TO SECTION 105 OF THE CODE FROM TAKING ANY ACTION TO CORRECT OR ENFORCE ANY CLAIM DIRECTLY OR INDIRECTLY AGAINST THE REORGANIZED DEBTOR IN ANY MANNER INCONSISTENT WITH THE TERMS CONTAINED IN THE PLAN. THE DISCHARGE GRANTED BY THE PLAN VOIDS ANY JUDGMENT AT ANY TIME OBTAINED WITH RESPECT TO ANY DEBT DISCHARGED.**

## XIV.   RECOMMENDATION AND CONCLUSION

The Debtor respectfully submits that the Plan satisfies all of the statutory requirements of Chapter 11 of the Bankruptcy Code, including the "best interest of creditors" and "feasibility" requirements and that it should be confirmed even in the event a class of claims does not vote for acceptance of the Plan.  The Debtor believes that the Plan "is fair and equitable" and "does not discriminate unfairly." Additionally, the Debtor believes that the Plan has been proposed in good faith.

For all of the reasons set forth in this Disclosure Statement, the Debtor believes that Confirmation and consummation of the Plan is preferable to all other alternatives discussed herein. Consequently, the Debtor urges all Holders of Claims to vote to accept the Plan, and to complete and return their Ballots so that they will be received by the Balloting Agent on or before the Voting Deadline.

Dated: July 31, 2020

**VIRTUOLOTRY, LLC**

By:    <u>*/s/ Richard Boyd*</u>
        Name: Richard Boyd
        Title:   Manager

COUNSEL FOR THE DEBTOR:

Jason P. Kathman
State Bar No. 24070036
Megan F. Clontz
State Bar No. 24069703
PRONSKE & KATHMAN, P.C.
2701 Dallas Pkwy, Suite 590
Plano, Texas 75093
(214) 658-6500 - Telephone
(214) 658-6509 – Telecopier
Email: jkathman@pronskepc.com
Email: mclontz@pronskepc.com